ROSWELL H. NEWTON v. ELECTA BENNETT.

[IN CHANCERY.]

*Chancery.   Contract.*

The orator became bound to pay the defendant during her life $90. a year for her interest, with certain exceptions, in her late husband's estate, all parties supposing at the time that there was property enough, besides what the defendant quitclaimed to the orator, to pay debts and expenses of administration, but it fell short $108.82, made up of administration expenses and a small debt due the orator. For several years previous to the death of the defendant's husband, Derastus Bennett, the orator had lived with him and carried on his farm under a lease and indenture by which he was to have two-thirds of Derastus' farm, &c., at his decease, and the remaining third at the decease of his wife, the defendant, and had done his business and was as familiar with his property and business as the defendant herself. *Held,* that under the circumstances of the case the orator was not entitled to relief from his contract with the defendant either on the ground of guaranty, fraud or mutual mistake.

BILL IN CHANCERY.   The substance of the bill, answer and proofs, sufficiently appears in the opinion of the court.   At the April Term, 1864, BARRETT, Chancellor, the bill was *pro forma* dismissed, and the orator appealed.

*Field & Tyler,* for the orator.

*Geo. Howe,* for the defendant.

The opinion of the court was delivered by

PECK, J.   The bill and answer, and the written instrument therein referred to, leave but few questions of fact to be determined by the testimony of witnesses in the cause.   In consideration of the quit-claim deed executed by the defendant to the orator May 10th, 1859, conveying, with certain exceptions, her interest in the estate of her late husband, Derastus Bennett, the orator at the same time executed to the defendant a bond conditioned, among other things, to pay to the defendant ninety dollars each year during her life.   The defendant has commenced a suit at law on that bond for the nonpayment of that annuity; and this bill is brought to enjoin that suit on the ground that in equity the orator is entitled to be relieved to the extent of about $100. of the stipulated annuity.   The quit-claim deed embraces both real and personal estate.   The ground of relief alleged in the bill is that the orator executed the bond and took the quit-claim deed on the faith of the defendant's assurances that the property described in the deed was free of incumbrance, when in

fact the administrator of Derastus Bennett had a lien on it for payment of debts and expenses of administration, which he is attempting to enforce.

The proof does not show that there was any agreement on the part of the defendant, verbal or written, that she should pay the debts or expenses of administration.    The testimony of the orator himself excludes the idea of any agreement to that effect.    If there is any obligation resting on her to pay the debts and expenses, it results from certain representations claimed to have been made by her and Ward, who seems to have acted to some extent for her, on the occasion of the award, as it is called, by the witnesses.    It appears Derastus Bennett died in March, 1859, and left a will, and that one Dudley was immediately appointed administrator of the estate with the will annexed.  . In May following the orator and the defendant verbally submitted to three men the question, what the orator should pay to the defendant yearly, for her interest conveyed by the quitclaim above mentioned ; and that it was decided and verbally declared by those men, that he should pay her $100. annually during her life.    Soon after this the bond and quit-claim were executed. It is claimed by the orator that on the occasion of the award, and before the decision, he informed the arbitrators in the presence of Ward, who appeared to be acting in behalf of the defendant, that he wanted them to say what he should pay and have the property clear of incumbrance, and that the administrator inquired of the defendant, about the same time, whether there was property sufficient to pay the debts and expenses, aside from what she was going to quitclaim ; and that she said there was enough due to the estate for that purpose, and that there were no debts against the estate, and that the administrator communicated this to the arbitrators and that they acted on that supposition in fixing the amount to be paid.    The evidence is conflicting on this point, but the balance of testimony is in favor of the orator so far as this, that all parties supposed at the time that there was sufficient due to the estate to meet the wants of the administrator.    But this still leaves it an open question whether the understanding was that the orator, or the defendant, was to take the risk of the contrary event, as the deed is a quit-claim, and there is no provision in the bond requiring the defendant to indemnify the

orator against the administrator's lien, and as it appears that the orator knew quite as well about the condition and business affairs of the testator's estate as the defendant did; he having occupied the premises and transacted the business of the testator from 1844 to the time of the testator's death, as appears by the lease and indenture of 1844, and the testimony of the orator himself.

It is claimed in argument, although it is not alleged in the bill, that the defendant was guilty of fraud in holding out and suffering the arbitrators to act on the hypothesis, that the administrator would have no occasion to enforce his lien on the property in question. But we find no fraud or intentional misrepresentation on the part of the defendant, nor can we find that the orator was deceived by any representations of the defendant. The commissioners had not at that time acted, and it appears that no claim was ever allowed or presented before them against the estate, except an account in favor of the orator upon which a very small balance was found due from the estate. The residue of the administrator's claim is the usual and ordinary expenses of administration, and quite small in amount, and no more than the orator must have known would accrue, as he knew administration had been taken out.

It further appears in proof that the estate held a note against the orator, which the defendant supposed was due, not knowing of the offset; but it turned out that the orator's account over-balanced it. The orator had lived on the premises under the lease from the testator, from its date in 1844 to the testator's death, and transacted the little business the testator had to do, and was familiar with all his property and business affairs, and could judge as well as to the probability of the administrator requiring any of the property quitclaimed by the defendant, as the defendant could, and must be taken to have acted on his own knowledge and judgment in the matter, rather than on any representations of the defendant. There is no fraud that entitles the orator to relief.

It is further claimed that the orator ought to be relieved on the ground of mutual mistake of the parties. It is true, if some large and unknown incumbrance had come to light contrary to the expectation of both parties, such as to defeat the main object and purpose of the conveyance, the orator's losing substantially what he supposed

he was purchasing, and what the defendant supposed she was selling, it might furnish a case for setting aside the contract on the ground of mutual mistake. But the facts do not show any such case, nor such a case as warrants the setting aside the contract on the ground of mutual mistake. Nor does the orator offer in his bill to rescind the contract, it is not drawn with the aspect of such relief,—it goes for an indemnity against the claim of the administrator.

There is no sufficient basis for the relief prayed for, either upon the ground of a guaranty (even if a guaranty can be proved by parol), or fraud, or mutual mistake.

There is a further reason that would lead the court to doubt the equity of the relief sought. It appears by the proofs that the arbitrators decided the orator should pay the defendant an annuity of $100. during her life. When the orator and Ward, who acted for the defendant, met to have the papers made in pursuance of the agreement or award, the orator insisted that the defendant should pay one-half the taxes, and the annuity was reduced from $100. to $90. for the whole period of the defendant's life, on account of that claim being insisted on by the orator. This claim for taxes must have had reference to future taxes, or else the orator got much more than an equivalent; as the administrator's account shows that the whole taxes on the testator's estate, while in his hands was less than eight dollars. It was no part of the agreement or award that the defendant should pay such future taxes, and there was no law, justice or equity, in such claim on the part of the orator. It is difficult to see any plausible pretence for requiring the defendant to pay taxes during life on property that she had conveyed to the orator. Probably the reduction of $10. annually from the annuity which the defendant was entitled to, is an equivalent for the claim of the administrator from which the orator asks to be relieved at the expense of the defendant, whether the orator's claim had reference to past or future taxes; at least it may be so. But whether it is or not, the orator must first do equity by restoring the annuity to $100., according to the award, before he can successfully ask the equity he claims.

Decree of the court of chancery dismissing the bill affirmed, and cause remanded to that court to carry out the decree.